IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CARGILL, INCORPORATED,

                        Plaintiff,

                                                Civil Action No.
                                                5:03-CV-0530 (DEP)

            vs.

SEARS PETROLEUM & TRANSPORT
CORP., and SEARS ECOLOGICAL
APPLICATIONS CO., LLC,

                        Defendants.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

FULBRIGHT, JAWORSKI LAW FIRM    ALAN M. ANDERSON, ESQ.
225 South Sixth Street          RENEE L. JACKSON, ESQ.
Suite 4850                      CHRISTOPHER YOUNG, ESQ.
Minneapolis, Minnesota 55402

MACKENZIE, HUGHES LAW FIRM      STEPHEN T. HELMER, ESQ.
101 South Salina Street
Suite 600
Syracuse, New York 13221

FOR DEFENDANTS:

LATHROP, GAGE LAW OFFICE        WILLIAM R. HANSEN, ESQ.
230 Park Avenue
Suite 1847
New York, NY 10169

WALL, MARJAMA & BILINSKI, LLP      INDRANIL MUKERJI, ESQ.
101 South Salina Street, Suite 400
Syracuse, NY 13202

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____ DECISION AND ORDER

_____This action, which arises out of a commercial dispute between the

parties involving the alleged theft by Cargill, Incorporated ("Cargill") of

trade secrets belong to the defendants and their affiliates, was tried before

a jury beginning on February 7, 2005.[1]  At the close of trial the jury

returned a verdict, utilizing a verdict form provided for its use, making

certain findings with regard to various claims and counterclaims submitted

for its consideration as well as defenses raised with regard to those

claims, and awarding damages to the defendants on their patent

infringement counterclaim and certain of their common law causes of

action.

Based upon the jury's verdict as well as submissions received from

the parties, I have prepared a judgment to be entered by the clerk.  The

following constitutes the basis for inclusion of certain provisions in the

_____

[1]      This matter is before me based upon consent of the parties, pursuant to
28 U.S.C. § 636(c).  *See* Dkt. No. 61.

judgment, as well as rejection of the parties' contentions with regard to
other areas identified below.  This decision also addresses various
dispositive motions made during the course of the trial.

I.      BACKGROUND

The circumstances surrounding the parties' claims in this action
were addressed in detail in an earlier decision rendered in this action, with
which familiarity is presumed.  *See Cargill, Inc. v. Sears Petroleum &
Transport Corp.*, 334 F.Supp.2d 197 (N.D.N.Y. 2004).  I will recount only
so much of the circumstances as is necessary to provide context to my
rulings, including with regard to the judgment to be entered.

In or prior to 1998 David Wood, an officer and employee of
defendant Sears Petroleum & Transport Corporation ("Sears Petroleum"),
set out to explore development of an improved de-icing agent which would
minimize or eliminate some of the inherently undesirable traits associated
with existing formulations, including the presence of high organic
materials, phosphorus compounds and heavy metals, as well as
difficulties associated with stratification during storage and the plugging of
filters resulting from inconsistencies in the product.  To assist in the
formulation of an improved de-icing agent, Sears Petroleum retained

Robert A. Hartley, a Canadian chemist.

In December of 1998 inventors Wood and Hartley received information from BodyCote Ortech, Inc. ("BodyCote"), a Canadian laboratory retained to perform various testing associated with their efforts, disclosing a synergistic freezing point depressive effect experienced by combining low molecular weight carbohydrates and magnesium chloride. Inventors Wood and Hartley followed this discovery with the filing of a utility patent application on January 4, 1999, and later a continuation-in-part application on January 5, 2001, ultimately leading to the issuance on October 9, 2001 of United States Patent No. 6,299,793 (the '793 patent") to inventors Wood and Harley, and assignment of that patent to Sears Petroleum.

On July 29, 1999 a meeting was held in Rome, New York, where Sears Petroleum is headquartered, between representatives of Sears, including David Wood, and plaintiff Cargill, Incorporated ("Cargill"), the nation's leading producer of rock salt.  The purpose of that meeting was to explore the possibility of a joint business relationship between the two companies, to operate in the de-icing arena.  Following that session, which was relatively brief, the parties held a second, much lengthier

4

meeting in North Olmsted, Ohio on August 25, 1999.  Prior to that second meeting, the parties entered into a written confidentiality agreement which was intended to govern the exchange of information during those talks and protect the integrity of any confidential information disclosed by either of the parties.

Following the 1999 meetings, Cargill began researching the use of cane molasses, a source of low molecular weight carbohydrates discussed by Wood with Cargill representatives at the second session. These newly directed exploration efforts led to Cargill's development of a line of products bearing the ClearLane label.  Those products, which include, *inter alia*, ClearLane Liquid Treated Salt and ClearLane PNS Liquid Treated Salt, utilize liquids comprised of cane molasses, magnesium chloride, and other constituents as a prewetting agent which are sprayed onto rock salt prior to its application upon roadways and other surfaces where ice may form.  Cargill began selling the ClearLane Treated Salt products in October of 2000, and since then has experienced a significant rise in those sales, to a point where in its fiscal year ending May 31, 2004 it sold 318,140 tons of the treated salt, as compared to 22,957 tons in its first year of marketing the product.

5

II.   THE JURY'S VERDICT

On March 10, 2005, after a protracted period of deliberation, the jury returned a unanimous verdict, utilizing a jury verdict form which had been supplied for its use.  In its verdict, the jury addressed issues raised by Cargill in both its declaratory judgment claims and in defense of the Sears parties' infringement claims.  Addressing the question of priority date to be assigned to the '793 patent, the jury rejected January 7, 1998, based upon the filing of a provisional application at that point, as appropriate, but concluded that Sears Petroleum was entitled to the benefit of a January 4, 1999 priority date in light of the inventors' filing on that date of a non-provisional parent application.

Turning to the issues of anticipation and obviousness, the jury found that none of the eight claims of the '793 patent was either anticipated or obvious to one of ordinary skill in the art at the time of the invention.  The jury also rejected Cargill's claim that BodyCote Ortech should have been listed as an inventor in the '793 patent, and that David Wood should not have been.

The jury next addressed the question of inequitable conduct.[2]  In its

---

[2]       Though recognizing the issue as one for the court, *see Cargill, Inc.*, 334 F. Supp.2d at 230-33, I opted to submit to the jury the precursor questions of whether

verdict, the jury found that the inventors should have disclosed to the PTO their awareness that another similar de-icing product, known as Caliber, had been developed and was being offered for sale, and in fact had been sold, but concluded that Cargill had failed to demonstrate by clear and convincing evidence that in omitting this information in their submissions to the PTO, the inventors intended to deceive the patent examiner.

By its verdict, the jury found that by its manufacturing and using ClearLane Liquid and ClearLane PNS Liquid in its ClearLane Treated Salt products, Cargill directly infringed all eight claims of the '793 patent, either literally or under the doctrine of equivalents.  The jury also concluded, however, that Cargill's infringement was not willful.

On the question of patent damages, the jury was presented with two damage theories, one under which Sears Petroleum sought lost profits, and the other based upon the more traditional reasonable royalty analysis. The jury found that Sears Petroleum had experienced lost profits in the amount of $355,422 and affixed reasonable royalties at  $1,777,113,

_____

the inventors or their agents failed to disclose material information to the United States Patent and Trademark Office ("PTO"), and whether in doing so they intended to deceive the PTO.

calculated applying a royalty rate of $.1875 per gallon of liquid.[3,4]

In its verdict the jury was also asked to address various common law counterclaims asserted by the Sears parties.  The jury found that Cargill unlawfully misappropriated trade secrets from Sears Petroleum, though not from SEACO, and awarded Sears Petroleum $195,905 on that claim. The jury also concluded that Cargill had engaged in unfair competition with Sears Petroleum, though again not with SEACO, and awarded Sears Petroleum $355,422 on that cause of action.  The jury additionally found that Cargill breached the parties' August, 1999 confidentiality agreement, and awarded $355,422 – designated by the jury as duplicative of the amount awarded on the unfair competition cause of action – with respect to that claim.  The jury rejected, however, SEACO's claim that it was an intended third party beneficiary of the confidentiality agreement between Sears Petroleum and Cargill, and additionally found that Cargill had not breached a duty of good faith and fair dealing under its contract with Sears Petroleum.  Finally, the jury found that SEACO had proven unjust

---

[3]     As will be seen, this same amount was also awarded by the jury to Sears Petroleum on its unfair competition and breach of contract claims.

[4]     Based upon the formula utilized by Cargill at the relevant times to manufacture its product, this translates to a royalty rate of $1.50 per ton of ClearLane Treated Salt, or half of the amount sought as a reasonable royalty by the Sears parties at trial.

enrichment through Cargill's development and use of the ClearLane Liquid

and/or ClearLane PNS Liquid, and awarded SEACO $167,700 on that

count.[5]  In its verdict, the jury rejected the Sears parties' request for an

award of punitive damages with regard to the trade secret

misappropriation and unfair competition claims.

## III.   DISCUSSION

### A.   Ruling On Pre-verdict Rule 50 Motions

At various stages during the course of the trial, the parties moved for

the entry of judgment as a matter of law ("JMOL"), pursuant to Rule 50 of

the Federal Rules of Civil Procedure.  Decision was reserved on all of the

parties' Rule 50 motions.

A JMOL motion seeking a directed verdict prior to submission of

claims and defenses to a jury is governed by Rule 50 of the Federal Rules

of Civil Procedure.  That rule provides, in relevant part, that

> [i]f during a trial by jury a party has been fully heard
> on an issue and there is no legally sufficient
> evidentiary basis for a reasonable jury to find for
> that party on that issue, the court may determine
> the issue against that party and may grant a
> motion for judgment as a matter of law against that
> party with respect to a claim or defense that cannot

---

[5]   The jury chose not to award Sears Petroleum any damages for unjust enrichment.

> under the controlling law be maintained or
> defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).  When deciding a pre-verdict JMOL motion, a

court must view the evidence in a light most favorable to the non-moving

party, giving that party the benefit of all reasonable inferences to be drawn

from the evidence at trial.  *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,

136 F.3d 276, 289 (2d Cir. 1998); *Fiacco v. City of Rensselaer, New York*,

783 F.2d 319, 328-29 (2d Cir. 1986), *cert. denied*, 480 U.S. 922, 107 S.

Ct. 1384 (1987); *Phillips v. Bowen*, 189 F.R.D. 50, 52 (N.D.N.Y. 1999)

(Kahn, J.).  Such a motion must be adjudicated without assessing

credibility or considering the weight of the evidence.  *Williams v. County of*

*Westchester*, 171 F.3d 98, 101 (2d Cir. 1999) (citing *Galdieri-Ambrosini*

and *Vasbinder v. Ambach*, 926 F.2d 1333, 1339-40 (2d Cir. 1991)).  In

deciding a JMOL motion the court is tasked with determining whether,

considering the evidence in a light most favorable to the non-moving

party, and drawing all inferences in its favor, there is but one conclusion

which a reasonable jury could reach.  *Galdieri-Ambrosini*, 136 F.3d at 289;

*Fiacco*, 783 F.2d at 329 (citing and quoting *Simblest v. Maynard*, 427 F.2d

1, 4 (2d. Cir. 1970)).

With this standard in mind, I will now turn to the specific JMOL

motions made by the parties prior to submission of the case to the jury.

> 1.   Sears' Motion for JMOL on the Issues of Anticipation
> and Obviousness

At the close of Cargill's direct case, and again immediately prior to submission of the case to the jury, defendants sought JMOL dismissing those portions of Cargill's declaratory judgment claims, and its defenses to the Sears parties' counterclaims, which were based on anticipation and obviousness.  In their motions, the Sears parties argued that particularly in view of the heightened, clear and convincing evidence standard which applies, no reasonable jury could find that the claims of the '793 patent were either anticipated by the prior art, or obvious to a person of ordinary skill in the art.

Applying the significantly deferential standard which favors submission to the jury of colorable claims based upon the evidence adduced at trial, I deny Sears' motions related to obviousness and anticipation.  The evidence in the record, particularly the testimony of Cargill's expert, Dr. Wilfred Nixon, reflects that a reasonable jury could have concluded that the '793 patent claims were anticipated by one or more items of the various prior art offered during the course of the trial including, *inter alia*, U.S. Patent No. 6,149,834, entitled "Corrosion

Inhibited Chloride Salt De-Icers" issued to James A. Gall and Stephen F. Martz (the "Gall patent"); U.S. Patent No. 5,922,240, entitled "Deicing Composition and Method in Deicing" issued to Jeffrey A. Johnson and Lawrence Pratt (the "Johnson patent"); an article authored by Messrs. Sebree, B.R. and others, entitled "Brewers Condensed Solubles, I, Composition and Physical Properties" and published in Cereal Chemistry, 60(2) (1983) (the "Sebree Article"); a preliminary report issued in April of 1998 by the Highway Innovative Technology Evaluation Center ("HITEC"), entitled "Preliminary Findings for Ice Ban™" (the "April, 1998 Preliminary HITEC Report"); and the Caliber de-icing and anti-icing product.  Based upon the combination of these references and Dr. Nixon's interpretation, a reasonable jury could also have found that the claims of the '793 patent should have been obvious to a person of ordinary skill in the art at the time of the invention.

       2.   <u>Inventorship</u>

At trial, Cargill argued that the '793 patent is invalid based both upon the inclusion of David Wood as a named inventor, and the failure to identify Bodycote Ortech as an inventor based upon its contribution to the invention claimed in the patent.

In my August 27, 2004 pretrial decision I addressed this argument in the context of Cargill's claim that the omission of Bodycote as a named inventor in the application which led to issuance of the '793 patent should render the patent unenforceable on an equitable basis, finding no basis to find unenforceability in light of the lack of evidence of intent on the part of the applicants to deceive the PTO.[6]  *Cargill*, 334 F.Supp.2d at 235-36.  At trial, the Sears parties argued that in light of my ruling, the question of inventorship was no longer in play.  Cargill responded, convincingly, that the issue is also germane to the question of patent invalidity, and my ruling did not affect the impact of the inventorship question on that issue.  *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-51 (Fed. Cir. 1998).  Accordingly, the question of inventorship was considered as retaining continuing vitality, and was ultimately submitted to the jury for determination.

During the course of the trial I acknowledged that a reasonable factfinder could conclude that David Wood's contribution to the invention claimed in the '793 patent was not sufficient to support his inclusion as a

---

[6]       In that decision I determined that based upon the lack of intent to deceive I would "therefore grant Sears' motion for summary judgment dismissing this portion of Cargill's inequitable conduct defense."  *Cargill*, 334 F.Supp.2d at 236 (emphasis supplied; citation omitted).

named inventor.  The evidence at trial, when interpreted in a light most favorable to Cargill, could also support a finding that Bodycote Ortech supplied more than mere laboratory services, and in fact contributed to the innovative technology and conception which led to the claims set forth in the '793 patent.  I therefore deny Sears motion for JMOL on the question of inventorship.[7]

### 3. Inequitable Conduct

The Sears parties have also sought JMOL on the question of inequitable conduct, which requires the court to assess whether material information was withheld by the '793 inventors or their agents during the course of prosecution of their patent application, and whether by withholding such information they intended to deceive the PTO.

Applying the requisite standard, I am unable to conclude that no reasonable factfinder could have found either that material information was withheld from the PTO, or that the inventors acted with deceptive intent in failing to disclose such information.  As such, in ruling on a JMOL

---

[7]      Had the jury found invalidity on the basis of improper identification of inventors, the Sears parties nonetheless would have been afforded the opportunity to cure the perceived deficiencies under 35 U.S.C. § 256, based upon a showing of lack of intent to deceive the PTO, and thereby salvage the favorable verdict on their infringement claim. *Pannu*, 155 F.3d at 1350-51.

motion I am not positioned to weigh those two factors, as I must, in assessing this equitable defense.  The evidence at trial reflected that during the course of prosecuting the '793 patent inventors Wood and Hartley and their agents failed to disclose their awareness of the existence and potential sale of the Caliber product, as well as the potentially relevant April, 1998 Preliminary HITEC Report and the Sebree Article.  And, while there was no direct evidence presented of their intent to deceive the PTO, such evidence is rarely found; instead, deceptive intent generally can be inferred from such factors as the extent of the failure to disclose as well as the degree of materiality of the information withheld to the question of patentability.  *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180-81 (Fed. Cir. 1995).

Since I find sufficient evidence from which a reasonable factfinder could have concluded the existence of both the withholding of material information from the PTO and intent to deceive, I therefore will deny the Sears parties' motion for JMOL on the question of inequitable conduct.

### 4.    Standing

In its JMOL motion, Sears also seek dismissal of plaintiff's affirmative defense to Sears common law claims asserting, in essence,

that Sears Oil Company is the proper counterclaimant with regard to the Sears common law claims, including, *inter alia,* misappropriation of trade secrets.

The evidence at trial, interpreted in a light most favorable to Cargill, is equivocal regarding the interplay between Sears Oil and Sears Petroleum, as relates to development of the '793 patent invention.  While David Wood convincingly argued that it was Sears Petroleum which developed the technology, with Sears Oil merely fronting the money invested in the venture, I am unable to say with the requisite degree of certainty that no reasonable jury could have concluded that Sears Petroleum and/or SEACO did not possess the requisite interest in the trade secret technology associated with the '793 patent innovation to support the common law counterclaims set forth in their answer.  I therefore deny this portion of the Sears parties' motion as well.

### 5.  Noninfringement of Claims 4, 5, 6 and 8

In its motion for JMOL, Cargill argues that the evidence at trial that Cargill has infringed claims 4, 5, 6 and 8 of the '793 patent is completely lacking.  With regard to the thickener specified in each of the four claims at issue, Cargill maintains that the Sears parties are estopped from

arguing infringement under the doctrine of equivalents based upon the inventors' interaction with the patent examiner, during which their claims regarding thickeners was narrowed.

In addressing this issue, I reject Cargill's contention that through their exchange with the PTO the '793 inventors relinquished their right to claim equivalence of thickeners to those described in the claims, based upon *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S. Ct. 1831 (2002).  *Festo* teaches that when determining whether prosecution history estoppel bars a patent owner from claiming infringement under the doctrine of equivalents, the circumstances surrounding the narrowing amendment must be carefully examined. *Festo*, 535 U.S. at 736-37, 122 S. Ct. at 1839-40.  In this instance, the evidence reflects that the genesis of Sears' amendment was a desire by the patent examiner to be able to discern and distinguish between the low molecular weight carbohydrates serving as one of the key ingredients in the patented technology and the thickeners claimed.  In response, Sears placed limits upon the thickeners in order to provide a clearer line of demarcation between the low molecular weight carbohydrates and the thickeners, affixing those limits as between 60,000 and 1,000,000 for

17

cellulose derivatives and between 10,000 and 50,000 for carbohydrates, and additionally specifying a viscosity range.

In his testimony Sears' technical expert, Dr. Nauman, testified to the presence of soluble gums, consisting in part of high molecular weight carbohydrates, in the ClearLane products, functioning to increase viscocity and thereby serving the same purpose as the thickeners referenced in the disputed claims. Based upon that testimony I am unable to conclude, as a matter of law, that no reasonable factfinder could find infringement of claims 4, 5, 6, and 8 of the '793 patent based on the doctrine of equivalents.[8] Under these circumstances, a reasonable factfinder could have concluded that through its manufacture and use of ClearLane Liquid and ClearLane PNS Liquid Cargill infringed claims 4, 5, 6, and 8 of the '793 patent under the doctrine of equivalents, and that such claims should not be precluded by the doctrine of prosecution history estoppel based upon the inventors' interaction with the PTO.

---

[8]     In its motion Cargill also offers, in further support of its position, the deposition testimony given by the Sears parties under Rule 30(b)(6) during which David Wood stated his belief that the ClearLane products did not contain a thickener, as described in claim four of the '793 patent. I have discounted that testimony, which was read into the record at trial and thus considered by the jury, in light of the fact that it was given prior to announcement of my claim construction, in which I determined that the thickener referenced in the disputed claims was not required be a separate additive, but instead could be inherent in the product itself.

### 6.    SEACO Counterclaims

In its JMOL motion, Cargill also challenges the sufficiency of counterclaims asserted on behalf of SEACO.  Cargill maintains that the inclusion of SEACO in the counterclaims eviscerates the legal distinction between SEACO and Sears Petroleum, based upon the fact of their separate corporate entities.

Unquestionably, from a purely corporate law point of view SEACO and Sears Petroleum are separate companies.  The evidence adduced at trial, however, revealed that Sears Petroleum and SEACO are closely interrelated.  SEACO is a wholly-owned subsidiary of Sears Petroleum, with substantial commonality of personnel, including David Wood.  The two companies file a single, combined tax return.  In light of these factors, the lines of demarcation between Sears Oil, Sears Petroleum, and Sears are blurred, and not easily drawn.

SEACO has, in its own right, been included in each of the Sears parties' counterclaims.  While, based upon the inability to distinguish between the entities, I deny in large part Cargill's JMOL motion on this issue, I do find merit to the motion in one respect.  I have previously held that as, at best, an equitable owner of the '793 patent – as the jury in fact

found – SEACO is not entitled to recover damages for Cargill's infringement, although it may be entitled to the benefit of equitable relief. Thus, to the extent that Cargill's motion addresses that claim and it has not already been disposed of, the Rule 50 motion is granted, and SEACO's claim for damages for patent infringement is dismissed.

SEACO is also included as a counterclaimant with respect to the common law claims for misappropriation of trade secrets, unfair competition, breach of contract based upon a third-party beneficiary theory, and unjust enrichment. Based upon the evidence at trial a reasonable factfinder could have concluded that Cargill competed unfairly with SEACO, a company formed to manufacture and sell products in the ice control market, and that by its actions Cargill was unjustly enriched to the detriment of SEACO. A reasonable factfinder also could have found, based upon the commonality of interests, and David Wood's involvement, that SEACO possessed the requisite interest in trade secrets which were divulged during the course of the 1999 meetings, and thereafter misappropriated by Cargill.

In sum, Cargill's JMOL motion to dismiss the counterclaims of SEACO as a matter of law is denied except with respect to the claim for

patent infringement damages; as to that claim, Cargill's motion is granted.

### 7.   Willful Infringement and Punitive Damages

Arguing that its actions were reasonable as a matter of law, Cargill asserts entitlement to JMOL dismissing the Sears parties' claim for willful patent infringement and request for punitive damages on the common law counterclaims.

In a patent infringement setting, willfulness may be found where it is demonstrated that the infringer acted in disregard of a patent and had no reasonable basis for believing it had a right to act as it did.  *See SRI Int'l v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997); *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1056 (Fed. Cir. 1994).  In judging whether a party's infringement was willful, a jury must determine "whether, under all the circumstances, a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed."  *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988).  In the event of a finding of willfulness the trial court may, in its discretion – although it is not required to – award enhanced damages of up to three times the compensatory damage award pursuant to 35 U.S.C. § 284.  *Read Corp. v. Portec, Inc.,*

21

970 F.2d 816, 826 (Fed. Cir. 1992).

After a party receives actual notice of another's rights to an issued patent, that party is charged with an affirmative duty to act with due care. *Read Corp.*, 970 F.2d at 828; *Ortho Pharm Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983).  The appropriate point from which to assess willfulness is at the time the alleged infringer receives notice of the patent.  *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999) (citations omitted); *see also State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1237 (Fed. Cir. 1985).

One way in which accused infringers typically strive to fulfill the obligation of due care is to seek and rely upon legal opinions.  Legal opinions that conclude that an accused bears no potential liability – even if ultimately found to have been incorrect – can serve to insulate an infringer from a willful finding if they are both competent and followed.  *See Ortho Pharm.*, 959 F.2d at 944-45; *see also Read Corp.*, 970 F.2d at 828-29.  The competency requirement applies to both the quality of the person giving the opinion and its content.  *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996).  An opinion is competent if it is "thorough enough,

as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharm.*, 959 F.2d at 944.  An opinion may be competent regardless of whether it turns out to be contrary to the outcome of the litigation. *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 793-94 (Fed. Cir. 1995) (citing *Read* and *Ortho Pharm.*).  Competency must be judged objectively, based upon the opinion's tone and apparent rooting in an adequate foundation. *Read Corp.*, 970 F.2d at 830; *Ortho Pharm.*, 959 F.2d at 944-45.

A client's reliance on an opinion is reasonable so long as the opinion contains "sufficient internal indicia of creditability[.]" *Underwater Devices*, 717 F.2d at 1390.  The most important consideration is that nothing in the letter would alert a client to reject it as "an obviously bad opinion." *Read Corp.*, 970 F.2d at 830.  The client need not necessarily understand the opinion, or evaluate its legal competence, as that would defeat the purpose of obtaining legal counsel. *Id.* at 829.

"A written opinion may be incompetent on its face by reason of its containing merely conclusory statements without discussion of facts or obviously presenting only a superficial or off-the-cuff analysis." *Read*

*Corp.*, 970 F.2d at 830 (citing *Underwater Devices*, 717 F.2d at 1390).  An opinion might not suffice to shield a party from a willfulness finding where an outside attorney was reluctant to give an oral opinion based on the facts before him or her, but was pressured into doing so, or where a client had previously received detailed written opinions but in that case had acted on the basis of an oral opinion.  *See Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1559 (Fed. Cir. 1986).

"[L]egal advice is only one factor to be considered [on the question of willfulness], and an opinion of counsel does not guarantee against a finding of willfulness."  *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992) (citing, *inter alia*, *Ryco, Inc.*, 857 F.2d at 1428).  In a case where the infringer knows or has reason to believe that reliance upon the opinion of counsel is not reasonable, a finding of willfulness can result.  *Minnesota Mining & Mfg. Co.*, 976 F.2d at 1580-81.

The evidence adduced at trial revealed that on October 12, 2001, three days after issuance of the '793 patent, Sears' counsel wrote to Cargill accusing it of infringement.  In response, in or about November 2001 Cargill retained Merchant & Gould, a firm which had previously

24

performed intellectual property work for it, and whose reputation and

competence in the field Sears does not challenge, to opine concerning the

claim of infringement.  That opinion, however, was significantly

circumscribed.  Counsel was not asked to opine regarding the question of

infringement, and in fact was never provided with a chemical analysis of

the constituents of ClearLane Liquid for comparison to the claims of the

'793 patent.  Instead, the Merchant firm was asked only to address

whether Sears was entitled to an earlier priority date than January 5, 2001

for its '793 patent, based upon one or both of the earlier patent application

filings, and if not whether Cargill's prior art deprived Sears of its claim of

priority.  The letter received in response to the request stated only that

"any claim interpreted to cover the Cargill ClearLane composition is prima

facie invalid", and went on to state that by that, the firm

> meant that, in the absence of an additional showing by Sears
> Petroleum, any claims of '793 found to cover ClearLane as
> defined would be concluded to be invalid given the conditions
> stated.  Of course, if Sears Petroleum or Hartley et al. were
> able to establish that the invention claimed in '793 was in fact
> in their possession prior to February 28, 2000, it potentially
> removes the effect of the February 28, 2000, Cargill
> provisional filing, as prior art.

Defendants' Trial Exhibit 61.  This conditional language is extremely

significant, given the interaction between the parties in 1999.  The

evidence at trial strongly suggested, and by its verdict the jury in fact

found, that Cargill representatives were aware at least by August of 1999

of the Sears invention which formed the underpinnings of the '793 patent.

From this a reasonable factfinder could well have concluded that reliance

upon this extremely limited opinion letter was unreasonable, thus giving

rise to a finding of willfulness.  Cargill's motion for JMOL on the question

of willfulness is therefore denied.

For similar reasons, the Cargill motion for JMOL on the question of

punitive damages must fail.  Punitive damages are available, under New

York law, to punish a party for outrageous conduct and to deter that party

and others from engaging in similar conduct in the future.  *City of Newport

v. Fact Concerts, Inc.*, 453 U.S. 242, 266-67, 101 S.Ct. 2748, 2759-60

(1981); *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1118 (2d Cir. 1986)

(citing *Walker v. Sheldon*, 10 N.Y.2d 401, 404-05, 179 N.E.2d 497, 499-

500, 223 N.Y.S.2d 488, 490-91 (1961)).  Punitive damages are

appropriately awarded, in a jury's discretion, in the event of a showing that

a defendant's actions were willful, wanton and maliciously committed.

*See Whitney*, 782 F.2d at 1118 (citing *Walker*).  In this case, there was

ample evidence adduced at trial upon which a jury could, in its discretion,

have decided to award punitive damages for Cargill's misappropriation and use to its own benefit of confidential, trade secret  information entrusted to it during the course of a meeting to discuss a joint venture between the parties.  Cargill's motion for JMOL dismissing the Sears parties' punitive damages claim is therefore also denied.

      B.    <u>Inequitable Conduct</u>

In its declaratory judgment action, as well as in defense of the Sears parties' infringement counterclaims, Cargill asserts that the '793 patent is unenforceable as a result of inequitable conduct on the part of the inventors.  One of the principal bases for Cargill's assertion of inequitable conduct is the claim that inventors Wood and Hartley, as well as their agents who assisted in the prosecution of the '793 patent application, failed to disclose to the PTO material, non-cumulative information which would have been important to consideration of the patent application.

Analysis of a claim of inequitable conduct based upon failure to disclose information to the PTO during the prosecution of a patent requires consideration of two issues, embracing whether 1) the information not disclosed is material, and additionally 2) whether the evidence presented establishes intent to deceive or mislead the PTO.

*See Molins PLC*, 48 F.3d at 1178.  If the evidence presented meets or exceeds the threshold required showings of materiality and intent to deceive, the court must then weigh those considerations and determine whether, sitting in equity, it should preclude a patent owner from enforcing the patent procured as a result of its conduct.  *Id.*; *see also ConMed Corp. v. Erbe Electromedizin GmbH*, 241 F.Supp.2d 187, 194 (N.D.N.Y. 2003), *vacated due to settlement*, No. 00-CV-987, 2004 WL 1576596 (N.D.N.Y. June 29, 2004).

The issue now under consideration implicates the court's inherent power to prevent enforcement of a patent obtained through inequitable conduct.  *See Molins PLC*, 48 F.3d at 1178.  In light of the substantial overlap of issues bearing on patent validity and infringement, and those associated with the inequitable conduct claim, however, and to avoid the possibility of internally inconsistent results, I followed the procedure outlined in *Herman v. William Brooks Shoe Co.,* No. 95 CIV. 1324, 1998 WL 832609, at *5 (S.D.N.Y. Dec. 1, 1998), under which I initially asked the jury to address, in its advisory capacity, the threshold questions of materiality of any information not disclosed to the PTO, and of intent to deceive.  *See Cargill*, 334 F. Supp.2d at 233.  With the benefit of the jury's

28

determination of those two pivotal issues, I intended to then decide

whether the Sears parties should be precluded from enforcing the '793

patent, weighing materiality and intent to deceive, based upon the jury's

findings. *Id.*

By its verdict, the jury found that material and non-cumulative

information – to the effect that Caliber, a product similar to that disclosed

in the '793 patent, was being offered for sale and had been sold – was

known to the inventors and should have been disclosed to the PTO.  The

jury further found, however, that Cargill had not proven by clear and

convincing evidence that in failing to disclose the Caliber product

inventors Wood and Hartley, together with their agents, intended to

deceive the PTO.  I adopt these findings, which are well supported by the

evidence in the record.  And, in the absence of any finding of deceptive

intent, I hold that the '793 patent is not unenforceable on the basis of

inequitable conduct.

C.    Permanent Injunction

Among the relief sought by the Sears parties in connection with their

infringement counterclaims, and requested in their application for the entry

of judgment, is a permanent injunction against Cargill's continued

29

infringement of the '793 patent.

Ordinarily, a finding of infringement of a valid and enforceable patent will result in the issuance of an injunction against further infringement, absent a sound reason for denying such relief. *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed. Cir. 1988). In this regard, the law presumes the existence of irreparable harm upon a finding of infringement, although that presumption is subject to rebuttal. *See Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1580-81 (Fed. Cir.), *cert. denied*, 464 U.S. 996, 104 S. Ct. 493 (1983).

In this instance, Cargill urges the court to depart from this customary practice and deny Sears Petroleum's request for an injunction, arguing that it has an adequate remedy at law given the jury's finding of a reasonable royalty, characterized by Cargill as "generous." Plaintiff argues that through application of this royalty rate to ongoing sales by Cargill of infringing products, Sears Petroleum can be adequately compensated for any continued infringing conduct.

I reject this proposed alternative to the preferred use of injunctive relief to vindicate the '793 patent owner's protected rights. What Cargill requests is essentially to force Sears Petroleum into a business

relationship with the plaintiff, and to license its patented technology to

Cargill at a rate affixed by a jury that neither approaches the royalty rate

sought by the Sears parties at trial, nor is the result of arms length

negotiations between the parties.  With a finding of infringement, in my

view Sears should be afforded the opportunity to engage in negotiations

with Cargill, as well as with its competitors, should they desire to utilize the

innovations taught by the '793 patent, with an eye toward entering into

mutually acceptable license agreements.  In the absence of such a

negotiated agreement, Cargill should be precluded from infringing the '793

patent.  I will therefore include a permanent injunction as part of the

judgment to be entered in this case.

>    D.    <u>Stay Of Injunction</u>

Cargill has asked that in the event of issuance of a permanent

injunction, I stay that injunction pending its anticipated appeal of the final

judgment to the Federal Circuit.  Sears opposes that request, arguing that

it will effectively be denied the benefit of its favorable verdict, should

Cargill be permitted to continue its infringing conduct.

Rule 62(c) of the Federal Rules of Civil Procedure authorizes a

district court, in its discretion, to stay an injunction issued by it, pending

appeal.[9]  *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
Civ. Nos. 99-CV-274, 99-846, 2004 U.S. Dist. LEXIS 10730, at *66 (D.
Del. June 9, 2004).  The decision of whether to grant such relief in a case
such as this is informed by four factors, including 1) the likelihood of
success on the merits of the appeal; 2) the likelihood of irreparable injury
to the party against whom the injunction has been granted absent a stay;
3) whether substantial injury will befall the party in whose favor the
injunction was granted if it is stayed; and 4) consideration of the public
interest.  *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d
511, 512 (Fed. Cir. 1990); *Union Carbide*, 2004 U.S. Dist. LEXIS 10730,
at *66-*67; *Nat'l Instruments Corp. v. The Mathworks, Inc.*, No. 2:01-CV-
11, 2003 U.S. Dist. LEXIS 25863, at *17-*18 (E.D. Tex. June 23, 2003).
Determination of the appropriate weight to allocate to each of these
factors, as well as the ultimate question of whether to award such relief,
lies within the court's discretion.  *National Instruments*, 2003 U.S. Dist.

---

[9]        That section provides, in pertinent part, that

[w]hen an appeal is taken from an interlocutory or final judgment granting
. . . an injunction, the court in its discretion may suspend, modify, restore
or grant an injunction during the pendency of the appeal upon such terms
as to bond or otherwise as it considers proper for the security of the
rights of the adverse party.

Fed. R. Civ. P. 62(c).

LEXIS 25863, at *18.

Gauging Cargill's likelihood of success on appeal, the first of the factors to be considered, is somewhat difficult in this case.  On the one hand the jury's verdict, which followed five days of deliberation, appears well reasoned, and its determinations on the various issues relating to the patent infringement claims are both internally consistent and adequately supported by the evidence in the record.  By the same token, I am mindful of the sheer number and complexity of the legal and factual issues which have been presented with regard to those claims, as well as the difficulty experienced by me when attempting to construe the claims of the '793 patent and discern the intended meaning of certain of the patent's critical claim terms.  *See Lisle Corp. v. A.J. Mfg. Co.*, No. 02 C 7024, 2004 U.S. Dist. LEXIS 6024, at *13 (N.D. Ill. Apr. 6, 2004) ("Given the professed difficulties that this Court had in arriving at its claim construction, the Defendants have a fair likelihood of success on the merits of an appeal of the claim construction ruling.").  I am also cognizant of the Federal Circuit's unusually high rate of reversal, particularly when engaged in *de novo* review of claim construction.[10]  Thus, while remaining confident of

---

[10]     In a dissent in *Cybor Corp. v. FAS Techs., Inc.*, Federal Circuit Judge Rader observed that

my rulings and the jury's verdict, I assess this factor as weighing in Cargill's favor.

Taking the second and third factors together, I am required to evaluate the relative harm to the parties of either allowing the injunction to be implemented or, instead, granting a stay.  This analysis is made against the backdrop of an acknowledged preference for maintaining the status quo pending appeal.  *See GTE Prods. Corp. v. Kennametal, Inc.*, 772 F.Supp. 907, 921 (W.D. Va. 1991).  While undoubtedly, one party or the other will experience harm, depending on the outcome of this issue, I am at least in a position to temper the harm by requiring the posting of adequate security, as authorized under Rule 62(c), so that, for example, Sears Petroleum is guaranteed realization of reasonable royalties on sales made of the infringing products pending appeal in the event a stay is granted.

―――――――――――――

> [t]he Federal Circuit, according to its own official 1997 statistics, reversed in whole or in part 53% of the cases from district courts (27% fully reversed; 26% reversed-in-part).  Granted this figure deals with all issues in cases with many issues.  Nonetheless, one study shows that the plenary standard of review has produced reversal, in whole or in part, of almost 40% of all claim constructions since *Markman* [*v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384 (1996)].

138 F.3d 1448, 1476 (Fed. Cir. 1998) (Rader, J., dissenting).

The fourth factor in the stay analysis requires a survey of the public's interest in the continued sale of the infringing product.  In this case, the evidence at trial reflected that Cargill sells a large volume of treated salt to municipalities, and that those sales are primarily through contracts that are competitively bid.  Under these circumstances the public's interest, and the need not to interfere with a steady and available flow of treated salt for municipalities to use, pending appeal, is the decisive factor warranting a stay of injunction.  In this case "[a] stay of the injunction will ensure that any ultimate interference with the third parties' continuing reliance on these products occurs only after the Court of Appeals designated to hear patent cases has passed on this complex case."  *National Instruments*, 2003 U.S. Dist. LEXIS 25863, at *21-*22.

In sum, the circumstances of this case persuade me, in my discretion, to grant the requested stay of injunction, pending appeal.  That stay is conditioned upon Cargill's posting of a bond in the sum of $1.5 million within thirty days, to ensure payments to Sears Petroleum for its continuing infringing activity at the reasonable royalty rate affixed by the jury, calculated out to a period of eighteen months – the estimated time

35

until final disposition of any appeal to the Federal Circuit.[11]  *Cf.*, *National Instruments*, 2003 U.S. Dist. LEXIS 25863, at \*20 (ordering the infringer to place in escrow reasonable royalties on a quarterly basis pending appeal).

E.    Mandatory Injunction Requiring Transfer Of U.S. Patent No. 6,398,797

Among the forms of relief sought by the Sears parties in their fourth counterclaim, asserting breach of contract, the Sears parties is a mandatory injunction directing Cargill to transfer its ownership interest, as an assignee, in United States Patent No. 6,389,979 (the "'979 patent"), issued on June 4, 2002 based upon development of the infringing ClearLane products.  *See* Second Amended Answer and Counterclaims (Dkt. No. 91) ¶¶ 80-93.  That request in essence seeks specific performance of obligations assumed under the parties' confidentiality agreement, dated August 12, 1999.  Defendants' Trial Exhibit 39.

Section 10 of that agreement provides, in relevant part, that

> Cargill agrees that all rights, title and interest in any and all inventions (including discoveries, ideas, or improvements, whether patentable or not), which are conceived or made during or after the term of this Agreement and are derived or result

---

[11]    This amount is determined based upon projected annual sales of 700,000 tons of ClearLane Treated Salt, extending over the next eighteen month period.

> from or in any way utilize [Sears Petroleum's]
> Confidential Information, shall belong to [Sears].

*Id.* at C002558.  By its verdict, the jury found that Cargill had breached the

confidentiality agreement by disclosing information shared during the 1999

meetings by David Wood, relating to the successful testing of a liquid de-

icer formulation comprised of low molecular weight carbohydrates,

including those derived from cane molasses, in combination with

magnesium chloride and water.  The evidence revealed that following that

disclosure to Cargill's Richard Rose, at Rose's direction Dr. Scott Koefod

began pricing, researching and testing cane molasses for use in a road

de-icer.  Those activities led to the filing on February 27, 2001 of the

application, entitled "deicer and pre-wetting agent", which ultimately

resulted in issuance of the '979 patent.

Under Minnesota law, which I have found governs the contract

claims in this case, *see Cargill,* 334 F. Supp.2d at 245, specific

performance is available to remedy a contract breach.  *See Park-Lake Car*

*Wash, Inc. v. Springer*, 394 N.W.2d 505, 512-13 (Ct. App. Minn. 1986)

(citations omitted).  In such a case the party seeking specific performance

need not elect between recovery of damages and specific performance as

a remedy.  *Popp Telecom v. American Sharecom, Inc.*, 210 F.3d 928, 934

37

(8th Cir. 2000) ("Election of remedies has no application where a party 'has different remedies for the enforcement of different and distinct rights or the redress of different and distinct wrongs.") (quoting *Geo. A. Hormel Co. v. First Nat'l Bank*, 212 N.W. 738, 740 (Minn. 1927)).  Instead, Minnesota law provides that where a damage award does not afford adequate relief, specific performance is appropriate.  *Blankenfeld v. Smith*, 188 N.W.2d 872, 873-74 (Minn. 1971).  In this case, the jury awarded damages to Sears Petroleum resulting from its finding of misappropriation of trade secrets.  From its verdict, however, it is apparent that those damages do not extend into the future, but instead were intended only to remedy past losses.

The Federal Circuit has approved use of the remedy of mandatory assignment of patents in situations where there has been a wrongful appropriation of intellectual property.  *See Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1249-50 (Fed. Cir. 1989).  By its endorsement of the use of such a mandatory assignment as a means of affording a full measure of relief to a party whose intellectual property has been misappropriated, that court specifically rejected the counterweight argument that administrative remedies, within the context of patent laws,

exist and are generally available to remedy the misappropriation, concluding that "[t]he courts are not powerless to redress wrongful appropriation of intellectual property by those subject to the court's jurisdiction."  868 F.2d at 1250.

As in *Richardson*, the jury in this case found misappropriation of confidential information entrusted to Cargill under the umbrella of a confidentiality agreement protecting the integrity of that proprietary information.  Under the controlling language of that agreement, such confidential information remains the property of Sears, as does any interest in any invention derived or resulting from the use of the confidential information.

It is true, as Cargill argues, that the '979 patent embodies not only molasses in a de-icing agent, but also other anti-corrosive constituents included based upon the earlier research of co-inventor Dr. Scott Koefod. Nonetheless, the jury's finding of the theft of trade secret information which obviously inured to Cargill's benefit, together with the breadth of the language, drafted by Cargill, included in section ten of the relevant agreement, convince me that the equities weigh in favor of the Sears parties on this issue.

In sum, since the evidence at trial and the jury's verdict reflect that the technology leading to the issuance of the '979 patent was the fruit of confidential information disgorged by David Wood during his meetings with Cargill under the protection of that agreement, I find that the remedy of specific performance is not only appropriate, but required in order to provide Sears a full measure of relief based upon the jury's verdict.[12]

G.   Infringement Damages Generally: Reasonable Royalty and Lost Profits

At trial, Sears Petroleum sought recovery of patent damages under two distinct theories, urging the jury to remediate Cargill's infringement by awarding both lost profits and damages under the familiar reasonable royalty theory.  Addressing that request, in my jury instructions I charged lost profits as an alternative measure of damages, based upon *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995), even

---

[12]     Cargill argues that the jury's verdict was a special verdict, controlled by Rule 49(a) of the Federal Rules of Civil Procedure, and that by failing to request the inclusion of a question on that verdict form relating to their quest for specific performance, the Sears parties have waived entitlement to seek such relief.  When submitting the matter to the jury it was the court's intention to obtain from the jury a general verdict accompanied by answers to written interrogatories, pursuant to Rule 49(b) of the Federal Rules of Civil Procedure.  *Bradway v. Gonzales*, 26 F.3d 313, 316-17 (2d Cir. 1994).  In any event, this distinction is legally irrelevant, since the question of specific performance is addressed to the court's equitable powers, and any response by the jury addressing that issue would be advisory only.  *See Johnson v. Jonson*, 137 N.W.2d 840 (Minn. 1965); *Simon Home Builders, Inc. v. Pailoor*, 357 N.W.2d 383, 385-86 (Ct. App. Minn. 1984).

though Sears does not directly compete with Cargill in the traditional sense contemplated under such cases as *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978).  My charge was explicit, however, in conveying to the jury the well-established precept that reasonable royalty based upon past infringement represents the minimum amount of damages recoverable in such a case.

It is true, as Sears now argues, that my charge apprised the jury of Sears' contention that were it not for Cargill's infringement Sears would have been able to enter into licenses under the '793 patent with Cargill and other rock salt sellers and thereby realize profits, in the form of royalties under those license agreements.  The only proof offered by Sears at trial with regard to lost profits, however, including through its own damages expert, addressed lost royalties under an agreement which Sears believes it would have entered into with Cargill, were it not for the infringing conduct.  Consequently, to allow Sears to recover both reasonable royalties, and additionally the lost profits of $355,422 awarded by the jury, based upon Sears' invitation that I now assume this amount represents a finding as to royalties it would have received under licenses with salt companies other than Cargill, would be unduly speculative.  *See*

41

*Grain Processing Corp. v. American Maize Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("Reconstructing the market, by definition a hypothetical enterprise, requires the patentee to project economic results that did not occur.  To prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture.")  The damages included in the judgment for patent infringement will therefore be limited to reasonable royalties, as assessed by the jury.

> H.   Prejudgment Interest

> 1.   Patent Infringement Claims

When patent infringement is found, and infringement damages awarded, an award of prejudgment interest is generally appropriate. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657, 103 S. Ct. 2058, 2063 (1983).  The determination of the rate of interest to be applied, as well as whether interest should be compounded, and if so with what frequency, are matters entrusted to the sound discretion of the court. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555 (Fed. Cir.), *cert. denied*, 516 U.S. 867, 116 S. Ct. 184 (1995); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1580 (Fed. Cir. 1988).  In

exercising that discretion, the court should be guided by the fact that

prejudgment interest is intended to place a patent owner in a position

equivalent to where it would have been had there been no infringement.

*Underwater Devices Inc.*, 717 F.2d at 1389.

The Sears parties urge application of the state statutory rate of nine

percent under New York law, and that interest at that rate be compounded

daily – even though New York law provides for only simple interest at a

rate of nine percent.  I find that such a generous award is not required in

order to serve the salutory purposes of awarding prejudgment interest,

and therefore reject this proposed approach.

For its part, Cargill proposes that prejudgment interest be calculated

based upon the U.S. Treasury Bill rates which govern the issue of post-

judgment interest.  To be sure, this is a methodology which has been

accepted and employed by some courts in patent cases.  *See*, *e.g.*,

*Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (the

United States Treasury Bill rate compounded annually); *Datascope Corp.

v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir. 1989), *cert. denied*, 493 U.S.

1024, 110 S. Ct. 729 (1990); *Accuscan, Inc. v. Xerox Corp.*, 96 Civ. 2579,

2000 U.S. Dist. LEXIS 2822, at *6-*8 (S.D.N.Y. Mar. 14, 2000).  In my

view, however, the implementation of such a rate will not adequately

return Sears Petroleum to the position it would have been in had there

been no infringement.  In that regard, I note that while there is no

evidence of Sears having to borrow money in order to survive the

infringement of its '793 patent, there is no requirement of such proof in

order to support an award of prejudgment interest.  *Union Carbide*, 2004

U.S. Dist. LEXIS 10730, at *63 (citing *Uniroyal, Inc. v. Rudkin-Wiley

Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991).

    Striking somewhat of a balance between these proposed extremes, I

will utilize an average of the monthly prime rates of interest in place over

the period of infringement.  Based upon information derived from the

Federal Reserve, that rate varied between a high of 6.98% and a low of

4.00% between June of 2001 and March of 2005.  The average monthly

prime rate over this period was 4.51%.  In order to ensure that the Sears

parties are placed in the position that they would have been had there

been no infringement, I also find that some measure of compounding is

appropriate.  Under the circumstances, I will calculate interest as accruing

at the time sales were made, and will compound interest annually.[13]

---

[13]    In their submission regarding the judgment to be entered, the Sears
parties urge the inclusion of a post-judgment interest provision.  *See* Sears

To calculate interest adopting this methodology, I have taken Cargill sales figures for ClearLane products on a yearly basis, and calculated interest on each year's sales from May 31 of the year in which the fiscal period ended, compounding interest annually from that point and bringing the figure forward to today's date. Using this method, and applying the royalty rate set forth in the jury's verdict, I will award $52,353.48 in prejudgment interest on the Sears' parties patent law claims.

### 2.    Common Law Counterclaims

With the exception of the breach of contract claim which, as Cargill points out, is subject to Minnesota law because of the choice of law provision contained within the relevant agreement, the Sears parties' common law counterclaims, including for unfair competition, misappropriation of trade secrets, and unjust enrichment, upon which the jury found liability and rendered damage awards, are all governed by New

---

Memorandum of Law in Support of its Proposed Judgment and Permanent Injunction (Dkt. No. 339) at 9. Post-judgment interest on a federal judgment is governed by 28 U.S.C. § 1961(a), which provides, in pertinent part, that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Since post-judgment interest under section 1961 is mandatory by operation of that statute, *see Indu Craft, Inc. v. Bank of Baroda*, 87 F.3d 614, 619 (2d Cir.), *cert. denied*, 519 U.S. 1041, 117 S. Ct. 609 (1996), it is not necessary that the judgment entered contain a provision addressing the issue.

York law.[14]  As such, prejudgment interest on those awards is also

governed by New York state law.  *See Marfia v. T.C. Ziraat Bankasi*, 147

F.3d 83, 90 (2d Cir. 1998).  Under New York law, prejudgment interest is

available, and indeed mandatory, on legal money damages awards.  *See*

*Mallis v. Bankers Trust Co.*, 717 F.2d 683, 694-95 (2d Cir. 1983).  *See*

N.Y. Civil Practice Law & Rules ("CPLR") § 5001.

In New York, prejudgment interest is calculated from the "earliest

ascertainable date the cause of action existed," CPLR 5001(b), and

extends through the date of the verdict to the time of entry of judgment at

a rate of nine percent per year.  CPLR 5004.  Interest awardable under

the CPLR is not compounded, but instead calculated only as simple

interest.  *Marfia*, 147 F.3d at 90.

According to the evidence at trial, Cargill's first sales of the infringing

ClearLane products derived from the Sears parties' technology occurred

on October 4, 2000.  I will therefore calculate prejudgment interest on the

Sears parties' counterclaims from that date, at a rate of nine percent per

---

[14]      Cargill urges the application of Minnesota law pertaining to prejudgment interest to the jury's breach of contract award.  Since that award is duplicative of the sum awarded by the jury on Sears Petroleum's unfair competition claim I have chosen to apply New York law to determine prejudgment interest on that claim, and have not included an award for breach of contract in the ultimate judgment, as such an award would be duplicative.

year, without compounding, and will award the following additional
amounts of prejudgment interest:

| Claim | Verdict Amount | Interest |
|---|---|---|
| Trade secret misappropriation | $195,905 | $79,703.81 |
| Unfair competition | $355,422 | $144,603.19 |
| Unjust enrichment | $167,700 | $68,228.63 |

IV.   SUMMARY AND ORDER

Based upon the foregoing, judgment will be entered reflecting the
jury's verdict and my determinations with regard to matters entrusted to
the court, including, *inter alia*, those implicating equitable defenses and
relief.  Entry of that judgment will obviously not affect the right of any party
to file appropriate post-judgment motions under Rules 50 and 59 of the
Federal Rules of Civil Procedure or to apply for other appropriate, post-
judgment relief including, *inter alia*, costs pursuant to Rule 54(d) of the
Federal Rules of Civil Procedure and attorneys' fees pursuant to 35
U.S.C. § 285.

It is therefore hereby

ORDERED as follows:

1)      All motions made by the parties during the course of the trial

seeking judgment as a matter of law are DENIED, except as to plaintiff's

motion for dismissal of defendant SEACO's claim for damages for patent

infringement; as to that claim, Cargill's motion is GRANTED;

     2)    The clerk is directed to enter the judgment which I have

prepared, consistent with this decision; and

     3)    The clerk is directed to promptly forward copies of this order to

the parties by electronic means.

Dated:    August 27, 2004
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\Civil\2003\03-CV-0530\dec&order4.wpd